# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASEY DOOLEY, | : | CIVIL ACTION |
| Petitioner | : | |
| v. | : | NO. 09-5755 |
| RAYMOND LAWLER, et al., | : | |
| Respondents | : | |

## ORDER

AND NOW, this       day of              , 2010, upon careful and independent consideration of the Petition for Writ of Habeas Corpus and Memorandum of Law in support thereof, the Response to Petition for Writ of Habeas Corpus and Reply thereto, and after review of the Report and Recommendation ("R&R") of United States Magistrate Judge Henry S. Perkin dated September 27, 2010, IT IS HEREBY ORDERED that:

1. the R&R is APPROVED and ADOPTED;

2. the Petition for Writ of Habeas Corpus is DENIED with prejudice and DISMISSED without an evidentiary hearing; and

3. there is no probable cause to issue a certificate of appealability.

BY THE COURT:

_____
MITCHELL S. GOLDBERG, J.

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| CASEY DOOLEY, | : | CIVIL ACTION |
|     Petitioner | : | |
| v. | : | NO. 09-5755 |
| RAYMOND LAWLER, et al., | : | |
|     Respondents | : | |

HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Presently before the Court is the pro se Petition for Writ of Habeas Corpus filed by the Petitioner, Casey Dooley ("Petitioner"), pursuant to 28 U.S.C. section 2254. Petitioner is presently incarcerated in the State Correctional Institution at Huntingdon, Pennsylvania. For the reasons that follow, it is recommended that this Petition should be denied with prejudice and dismissed without an evidentiary hearing.

**I.**     **PROCEDURAL HISTORY**.[1]

On June 6, 2002, following a jury trial before the Honorable Rayford A. Means, Petitioner was found guilty but mentally ill of five counts of attempted murder, five counts of aggravated assault, reckless endangerment and possession of an

---

[1] This information is taken from the Petition for Writ of Habeas Corpus, Memorandum of Law in support thereof, the Response to Petition for Writ of Habeas Corpus, the Reply thereto, and the attachments to those pleadings. In addition, this Court ordered and reviewed the state court record in this matter. The information contained in the state court record has been considered and incorporated into this Report and Recommendation.

instrument of crime.[2] On August 15, 2002, Petitioner was sentenced to five consecutive terms of twenty to forty years imprisonment for attempted murder, and a consecutive term of two and one-half to five years imprisonment for possession of an

---

[2] The Superior Court set forth the following relevant facts:

> On the morning of August 29, 2000 [Petitioner] parked his car along the car of Josephine Leary, walked up five (5) steps and entered into the home of Nicole Gaskins, where she was along with Josephine Leary. [Petitioner] approached the then 21 year old Ms. Gaskins, not saying a word, and shot her three times in the neck, shoulder and chin. [Petitioner] pursued Ms. Leary as she ran to her car, and fired several shots, shattering her driver's side window and left several bullet holes in the side of her car and the trunk. Unknown to these victims, not more than one half (½) hour before, [Petitioner] had entered into a distribution warehouse, inquired about a job, and upon exiting the office, stopped and fired a bullet into the chest of Joseph Connell. [Petitioner] then continued shooting at the employees at the warehouse, approached Randy Salvati and fired several shots, the first into Randy's face, another shot hitting him in the stomach. After leaving the warehouse, [Petitioner] was spotted entering a laundromat. There [Petitioner] encountered Dean Lockhart who was there washing his clothes. As testified at trial [Petitioner] approached Mr. Lockhart where he made a comment of "what's up old head". [Petitioner] then pointed a gun at Mr. Lockhart and began firing hitting him eight (8) times.
>
> Shortly after the shooting of Ms. Gaskins, and the shootings at the warehouse, Officer Morace, a Philadelphia police officer on patrol, spotted a black Ford Probe matching the description of [Petitioner's] vehicle. The Officer pulled up behind the vehicle, and signaled him to stop. [Petitioner] pulled his vehicle to the curb, but once the Officer opened his door to get out of his vehicle, [Petitioner] fled at a high rate of speed. [Petitioner's] vehicle was eventually brought to a halt when it was involved with a collision with another police vehicle. The Officer reached in the then shattered driver's side window and grabbed [Petitioner's] arm that was then holding a 9 millimeter handgun. The vehicle was in neutral and was rolling backwards, the officer however, was able to lunge into the passenger side door and stop the vehicle by putting it into gear. [Petitioner] was placed in a holding cell, where he sat naked, after apparently removing his clothes.

Commonwealth v. Dooley, 852 A.2d 1245 (Pa. Super. 2004)(table); Response, Exhibit A (April 7, 2004 Superior Court Memorandum) at 2.

2

instrument of crime, for an aggregate prison sentence of 102 and ½ to 205 years. Petitioner filed a Motion for Reconsideration of Sentence on August 26, 2002. This motion was denied by Judge Means on October 1, 2002.

Thereafter, Petitioner timely filed a direct appeal with the Pennsylvania Superior Court. In so doing, Petitioner averred that the trial court erred (1) in failing to state the reasons for exceeding the sentencing guidelines; (2) in calculating the offense gravity score; and (3) in double counting factors already included in the guidelines, all of which rendered the sentence "unreasonable and excessive."[3]  Commonwealth v.

---

[3] According to the Petition for Allowance of Appeal from the Superior to the Supreme Court, Petitioner sought review of the following issues:

> Can a claim that a sentence is facially illegal be waived?
>
> Can a claim that the sentence illegally exceeds the statutory maximum be waived or may it be raised at any time?
>
> Is the court's failure to state the applicable Sentencing Guidelines ranges within its discretion or does the failure to properly follow the mandated sentencing procedure make the sentence illegal?
>
> Is the court's failure to state the correctly calculate (sic) the Sentencing Guidelines ranges within its discretion or does the failure to properly follow the mandated sentencing procedure make the sentence illegal?
>
> Is the court's failure to state within which range of the Sentencing Guidelines, if any, it was imposing sentences within its discretion or does the failure to properly follow the mandated sentencing procedure make the sentence illegal?
>
> Is the court's failure to state sufficient reasons for an aggravated range sentence within its discretion or does the failure to properly follow the mandated sentencing procedure make the sentence illegal?
>
> Is the court's failure to state sufficient reasons for a sentence outside and beyond the Sentencing Guidelines within its discretion

Dooley, 852 A.2d 1245 (Pa. Super. 2004)(table); Response, Exhibit A (April 7, 2004 Superior Court Memorandum) at 2. By memorandum decision filed April 7, 2004, the Superior Court affirmed in part and vacated in part, stating as follows:

> The Pennsylvania Supreme Court has held aggravated assault is a lesser included offense of attempted murder, and the sentences imposed for the offenses must merge. This did not occur here, and we reject any contention that the concurrent nature of the aggravated assault sentences neutralizes our ability to review the subject.
>
> . . .
>
> Given the preceding, we find the sentence

---

> or does the failure to properly follow the mandated sentencing procedure make the sentence illegal?
>
> Is double counting as aggravators factors already calculated into the Sentencing Guideline Ranges within the sentencing court's discretion or does it make the sentence illegal?
>
> Is imposing maximum consecutive sentences in violation of the policy of the Sentencing Guidelines to treat like offenders alike and like offenses alike, demonstrating the sentencing court's failure to actually consider the Guidelines, within the sentencing court's discretion or does it make the sentence illegal?
>
> Is assigning no mitigating weight to the jury's verdict of guilty but mentally ill and imposing maximum consecutive total confinement sentences inconsistent as a matter of law with the jury's finding that petitioner's culpability was reduced by his lacking substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law?
>
> Is a claim that the sentence was unreasonable and excessive given the factors included within the Sentencing Guidelines and the defendant's history and circumstances sufficient to preserve the claim that the sentence was an abuse of discretion?

Response, Exhibit A (Petition for Allowance of Appeal from the Superior to the Supreme Court) at 5-6.

> imposed on the five counts of aggravated
> assault is illegal. In light of the error
> committed by the trial court, we have the
> option either to remand for re-sentencing or
> amend the sentence directly. We find no need
> to remand, however, because the aggravated
> assault sentences were ordered to be served
> concurrently. We will simply vacate the
> sentences imposed for the five counts of
> aggravated assaults as lesser included
> offenses of the corresponding five counts of
> attempted murder.

Commonwealth v. Dooley, 852 A.2d 1245 (Pa. Super. 2004)(table); Response, Exhibit A (April 7, 2004 Superior Court Memorandum) at 4-5 (citations omitted). The overall sentencing scheme was not affected, and Petitioner's aggregate prison sentence remained at 102 and ½ to 205 years. The Superior Court rejected Petitioner's remaining sentencing claims. Commonwealth v. Dooley, 852 A.2d 1245 (Pa. Super. 2004)(table); Response, Exhibit A (April 7, 2004 Superior Court Memorandum). Petitioner sought discretionary review by the Pennsylvania Supreme Court. On December 29, 2004, the Supreme Court declined review. Commonwealth v. Dooley, 864 A.2d 1203 (Pa. 2004).

On April 27, 2005, Petitioner filed a pro se petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"). See 42 Pa. C.S.A. §§ 9541, et seq. Counsel was appointed and an amended petition was filed alleging that trial counsel had been ineffective for failing to call unspecified character witnesses. Following the filing of the Commonwealth's motion to dismiss, counsel for Petitioner filed a second amended petition explicitly

5

specifying ten character witnesses, with attached affidavits.
More specifically, the second amended petition alleged that:

> (1) Petitioner was denied his rights to due process and effective counsel, under the laws and Constitutions of the United States and Pennsylvania, as the Petitioner's counsel was ineffective for failing to introduce character testimony on the Petitioner's behalf.
>
> (2) Petitioner was denied his rights to due process and effective counsel, under the laws and Constitutions of the United States and Pennsylvania, as the Petitioner's counsel was ineffective for failing to raise the issue of failure to introduce character testimony on the appeal of this matter.
>
> (3) In support of these grounds, attached are affidavits from Mary Crosby, Ronald Crosby, Sherry D. Gaskins, Derek A. Ingram, Gerald Marshall, Joann Marshall, Veronica R. Reed, Tyrone Reed, Geraldine D. Rozier and Jonto Swift, Jr.

See State Court Record (Second Amended Petition Under Post Conviction Relief Act); see also Commonwealth v. Dooley, 953 A.2d 826 (Pa. Super. 2008); Response, Exhibit B (April 2, 2008 Superior Court Memorandum). An evidentiary hearing was held on February 16, 2007. On June 1, 2007, the PCRA court dismissed Petitioner's petition as meritless.

Petitioner appealed to the Pennsylvania Superior Court, and the PCRA court wrote an opinion for appellate review dated August 3, 2007, disposing of the ineffectiveness claims. In the Superior Court, Petitioner advanced his PCRA claim of trial counsel ineffectiveness for failure to call character witnesses,

6

and also moved for remand based on PCRA counsel's alleged
ineffectiveness. In the motion for remand, Petitioner claimed
(1) that appellate counsel should have alleged PCRA counsel[4] was
ineffective in failing to allege in the PCRA petition that the
trial court erred in permitting testimony regarding
[Petitioner's] history of drug abuse to be admitted at trial and
(2) trial/direct appeal counsel was ineffective in failing to
object to the testimony. Commonwealth v. Dooley, 953 A.2d 826
(Pa. Super. 2008); Response, Exhibit B (April 2, 2008 Superior
Court Memorandum) at 5.

On April 2, 2008, the Superior Court denied the motion
to remand, concluding that the issue was waived as well as
meritless. In addition, the Superior Court affirmed the PCRA
court's determination that Petitioner's claim of attorney
ineffectiveness with respect character witnesses was meritless.
Commonwealth v. Dooley, 953 A.2d 826 (Pa. Super. 2008); Response,
Exhibit B (April 2, 2008 Superior Court Memorandum).
Petitioner's petition for allowance of appeal in the Pennsylvania
Supreme Court was declined on June 23, 2009. Commonwealth v.
Dooley, 973 A.2d 1005 (Pa. 2009)(table).

On September 18, 2009, Petitioner filed the instant pro

---

[4] As noted by the Superior Court, appellate counsel and PCRA counsel
were the same individual.

7

se Petition for Writ of Habeas Corpus in the United States District Court for the Middle District of Pennsylvania. United States Magistrate Judge Thomas M. Blewitt recommended that the Petition be transferred to this district, and the recommendation was adopted by United States District Judge James M. Munley on December 1, 2009.

Petitioner re-filed his Petition on this district's form on December 28, 2009.[5] On January 8, 2010, this case was referred by the Honorable Mitchell S. Goldberg for preparation of a Report and Recommendation. The Petition before this Court asserts ineffective assistance of counsel with respect to the following issues:

> 1. Trial counsel failed to object to evidence of Petitioner's drug use and abuse prior to the attempted murders.
>
> 2. Trial counsel failed to present expert testimony of the county jail psychiatrist who was the first mental health professional to examine Petitioner after the crimes.
>
> 3. Direct appeal counsel failed to raise claim of misleading statements made by prosecution in closing to the jury.
>
> 4. Trial counsel failed to object to the prosecutor's utilizing the period before the crime in an evaluation of competency.
>
> 5. Trial counsel failed to object to prosecutorial expert Dr. O'Brien's testimony

---

[5] Although Respondents aver that this form has not been scanned and placed on the dockets in .pdf form, this Court notes that the filing is indeed represented on the docket as entry number 3 and has been scanned in .pdf form.

regarding Petitioner's state of mind 18 months prior to the examination.

6. Trial counsel failed to have Petitioner examined by mental health experts, particularly those experts specializing in schizophrenia, prior to sentencing.

7. Trial counsel failed to object to the prosecutor's closing statement that if found insane, Petitioner would not be committed to a prison.

8. Trial counsel failed to request a jury charge that the Commonwealth had the burden of proving that Petitioner was not schizophrenic during the crime.

9. Trial counsel failed to request a curative instruction from the trial court following the prosecutor's closing statement that if found insane, Petitioner would not be committed to a prison.

10. Trial counsel failed to preserve the issue that Petitioner's sentence should be adjusted downward because of his schizophrenia and direct appeal counsel failed to raise the mental health issues that were preserved for appeal.

11. Trial counsel failed to object to the trial court sentencing Petitioner without identifying the sentencing guideline range utilized and also failed to object when the trial court erred in calculating the offense gravity score with respect to certain offenses.

12. Trial counsel failed to object to the trial court's failure to state the reason for sentencing in the aggravated range of the sentencing guidelines, which is cruel and unusual punishment and trial counsel failed to object when the trial court double counted aggravating factors when sentencing Petitioner.

>       13. Trial counsel failed to identify the
>       range he understood the trial court to be
>       using in sentencing Petitioner.

Petition at 9-13; Response at 9-10.

On January 13, 2010, the undersigned entered an Order directing that the Clerk of Quarter Sessions/Office of Judicial Support of Philadelphia County forward copies of all records, including transcripts of notes of testimony at arraignment, pre-trial and suppression hearings, trial, sentencing, and post-conviction hearings and appeals; all trial and appellate briefs and petitions, all pleadings, and all court opinions of proceedings in connection with this matter. The state court records pertaining to <u>Commonwealth v. Casey Dooley</u>, Court of Common Pleas of Philadelphia County, Nos. CP-51-CR-0312431-2001 and CP-51-CR-0312271-2001, were received in chambers of the undersigned on January 26, 2010.

On January 26, 2010, the undersigned granted *nunc pro tunc* Petitioner's request to file his Memorandum of Law in support of his Petition for Writ of Habeas Corpus. On March 31, 2010, Respondents filed a Response to the Petition for Writ of Habeas Corpus. Respondents contend that the claims set forth in the Petition are procedurally defaulted and lack merit, and aver that the Petition should be dismissed with prejudice. Petitioner's Traverse to Respondents Response to Petitioner's Writ of Habeas Corpus was filed on April 21, 2010. Having

reviewed the documents of record in this case, as well as the entire state court record, we offer this Report and Recommendation.

**II.    DISCUSSION.**

It is well established that a prisoner must present all of his claims to a state's intermediate court, as well as to its supreme court, before a district court may entertain a federal petition for habeas corpus.  28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 845, 847 (1999); Evans v. Court of Common Pleas, Del. County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992).[6]  "The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights." Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir.), cert. denied, 504 U.S. 944 (1992).  To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim raised in the federal petition was "fairly presented" to the state courts.  Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Petitioner must show that "the claim brought in federal court [is] the substantial equivalent of that

---

[6]     On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 that declares that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement.  This order is not to be applied retroactively.  See Wenger v. Frank, 266 F.3d 218, 225 (3d Cir. 2001), cert. denied, 535 U.S. 957 (2002).

11

presented to the state courts. Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989) (citations omitted), cert. denied, 493 U.S. 1036 (1990).

However, when the petitioner cannot obtain state court review of his claims because of noncompliance with state procedural rules, the doctrine of procedural default generally bars federal habeas corpus review. Coleman v. Thompson, 501 U.S. 722, 729-32 (1991); Sistrunk v. Vaughn, 96 F.3d 666, 674-75 (3d Cir. 1996). The Supreme Court stated:

> [I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

Coleman, 501 U.S. at 735 n.1. Upon a finding of procedural default, review of a federal habeas petition is barred unless the habeas petitioner can demonstrate (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law", or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Taylor, 501 U.S. 722, 750 (1990); Peterkin v. Horn, 176 F. Supp. 2d 342, 353 (E.D. Pa. 2001).

Petitioner can demonstrate cause for procedural default

if he can show that some objective factor external to the defense impeded or prevented his ability to comply with the state procedural rules.  Caswell, 953 F.2d at 862.  While ineffectiveness of counsel may, in some instances, constitute "cause" to excuse procedural default, Murray v. Carrier, 477 U.S. 478, 488-489 (1986),[7] in order to qualify, the ineffectiveness alleged must arise to an independent constitutional violation which claim itself must also be presented to state court.  Edwards v. Carrier, 529 U.S. 446 (2000).

To show prejudice, petitioner must present evidence that this factor did more than merely create a possibility of prejudice; it must have "worked to [petitioner's] actual and substantial disadvantage."  Murray, 477 U.S. at 494 (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  Additionally, the fundamental miscarriage of justice exception to procedural default is only concerned with "actual" innocence and petitioner must show that it is more likely than not that no reasonable juror would have convicted him absent the claimed error.  Schlup v. Delo, 513 U.S. 298, 327 (1995).

Petitioner's current claims of attorney

---

[7] "[A] claim of ineffective assistance" must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Murray, 477 U.S. at 489.

13

ineffectiveness[8] were never raised in the state appellate courts.[9] Accordingly, these claims are unexhausted in the state

---

[8] Claims for ineffectiveness of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, counsel is presumed effective, and to prevail on an ineffectiveness claim, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Given this presumption, a petitioner must first prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. In addition, a petitioner must prove prejudice. In order to do so, the petitioner must demonstrate that "counsel's errors were so serious as to deprive [petitioner] a fair trial, a trial whose result is reliable." Id. Thus, a petitioner must show a reasonable probability that, but for counsel's "unprofessional errors, the result of the proceeding would have been different. A reasonable probability is sufficient to undermine confidence in the outcome." Id. at 694. This determination must be made in light of "the totality of the evidence before the judge or jury." Id. at 695.

The United States Court of Appeals for the Third Circuit has cautioned that "[o]nly the rare claim of ineffectiveness should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Beuhl v. Vaughn, 166 F.3d 163, 169 (3d Cir.), cert. denied, 527 U.S. 1050 (1999)(quoting U.S. v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)). Under the revised habeas corpus statute, such claims can succeed only if the state court's treatment of the ineffectiveness claim is not simply erroneous, but objectively unreasonable as well. Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996).

Petitioner must show not only that counsel's conduct was improper, but also that it amounted to a constitutional deprivation. Petitioner must also show that the prosecutor's acts so infected the trial as to make his conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765 (1987)(citation omitted). Petitioner must show that he was deprived of a fair trial. Smith v. Phillips, 455 U.S. 209, 221 (1982); Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992), cert. denied, 508 U.S. 947 (1993)(citations omitted)(stating court must distinguish between ordinary trial error, and egregious conduct that amounts to a denial of due process).

[9] In Petitioner's motion for remand before the Pennsylvania Superior Court, Petitioner alleged that (1) PCRA counsel was ineffective in failing to allege that the trial court erred in permitting testimony regarding Petitioner's history of drug abuse to be admitted at trial and (2) trial counsel was ineffective in failing to object to the testimony. Commonwealth v. Dooley, 953 A.2d 826 (Pa. Super. 2008); Response, Exhibit B (April 2, 2008 Superior Court Memorandum) at 5.

To the extent Petitioner argues that those claims, made in a motion to remand and **not** in a brief on appeal, are related to his first claim asserted here, that is, that counsel failed to object to evidence of Petitioner allegedly using drugs and abusing drugs prior to the commission of the crime, we note initially that the current claim appears to be an

accusation against trial counsel, as opposed to his prior claim, which appeared to be an accusation against PCRA counsel. These claims are not the same.

Nevertheless, the Pennsylvania Superior Court found that even if this claim, as it was presented in a motion to remand, was reviewable, it lacked merit. More specifically, the Superior Court concluded, in pertinent part, as follows:

> Here, a review of the trial transcript reveals that [Petitioner] presented an insanity defense at trial and, in support thereof, he presented the expert testimony of a psychiatrist, Gary Michael Glass, M.D. During his testimony, Dr. Glass discussed [Petitioner's] "strange behavior" and noted that [Petitioner] had a history of using marijuana and PCP. N.T. 6/4/02 at 86-87. On cross-examination, the Commonwealth asked Dr. Glass about [Petitioner's] previous marijuana and PCP use and questioned whether the drugs contributed to [Petitioner's] actions. N.T. 6/4/02 at 136-143. Dr. Glass testified that [Petitioner], who is schizophrenic, may have used drugs in order to justify to himself why he was having hallucinations and hearing voices. N.T. 6/4/02 at 144.
>
> Thereafter, on rebuttal, the Commonwealth called a psychiatrist, Dr. John Sebastian O'Brien, who testified that his review of [Petitioner's] records reflected that [Petitioner] "used marijuana daily since the age of ten years and also used PCP or angel dust on a regular basis." N.T. 6/5/02 at 14. Dr. O'Brien opined that [Petitioner] suffered from a substance-induced psychotic disorder, and he was dependent on marijuana and PCP. N.T. 6/5/02 at 14-15. Dr. O'Brien acknowledged that individuals who suffer from mental disorders use drugs in order to cope with the symptoms; however, in this case, [Petitioner's] symptoms were caused by his drug abuse. N.T. 6/5/02 at 17. As a result of his evaluation, Dr. O'Brien concluded that [Peittioner] was not suffering from paranoid schizophrenia; but rather, he suffered from residual psychotic symptoms from his prior drug use. N.T. 6/5/02 at 34.
>
> We conclude that, since [Petitioner's] expert, Dr. Glass, "opened the door" for testimony regarding [Petitioner's] prior drug use, the Commonwealth was permitted to cross-examination (sic) Dr. Glass and present rebuttal expert testimony on the issue. ***See Commonwealth v. Datividad***, — Pa. — , 938 A.2d 310 (2007). In fact, a review of the record reveals that, as indicated during the parties' opening statements to the jury, one of the main issues to be resolved by the jury was whether [Petitioner's] actions were related to a mental disorder constituting legal insanity, whether [Petitioner's] actions were the result of his history of drug abuse, or whether [Petitioner's] actions were the result of some other factor. N.T. 5/31/02 at 21-22, 33-37, 43-46. Therefore, trial counsel was not ineffective in failing to object.

15

courts. See Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004)("To provide the State with the necessary 'opportunity', the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.").

Petitioner's unexhausted claims are now procedurally defaulted; such claims could be raised only in a second PCRA petition, which is now barred by the one-year statute of limitation. See 42 Pa. Cons. Stat. Ann. § 9545(b); Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002) ("It is now clear that this one-year limitation is a jurisdictional rule that precludes consideration of the merits of any untimely PCRA petition, and it is strictly enforced in all cases, including death penalty appeals."), cert. denied, 537 U.S. 1195 (2003).

---

Commonwealth v. Dooley, 953 A.2d 826 (Pa. Super. 2008); Response, Exhibit B (April 2, 2008 Superior Court Memorandum) at 6-7.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court is precluded from granting habeas corpus relief on any claim decided in a state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme of the United States." Vega v. Klem, No. CIV.A. 03-5485, 2005 WL 3216738, at *6 (E.D. Pa. Nov. 29, 2005)(citing 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 404-405 (2000); Fountain v. Kyler, 420 F.3d 267, 272-273 (3d Cir. 2005)).

In the present case, the record demonstrates that counsel cannot be deemed ineffective for failing to object to testimony that had been solicited by Petitioner in the first instance. Accordingly, we conclude that, even if this claim were reviewable, Petitioner could not identify any decision of the appellate court which is contrary to, or an unreasonable application of, Sixth Amendment jurisprudence. Petitioner, therefore, would not meet his burden of proving ineffective assistance of counsel on this claim.

Petitioner cannot demonstrate any factor external to the defense that prevented him from raising these claims in the state appellate courts. Accordingly, this court cannot excuse the procedural default because Petitioner has shown neither cause for the default[10] nor that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. The court cannot review Petitioner's unexhausted claims

---

[10] Petitioner's general assertion that he is suffering from a mental illness does not constitute "cause" within this circuit. Guy v. Moore, 2005 U.S. Dist. LEXIS 18670, *11 (E.D. Pa. August 29, 2005) (Giles, C.J.) (citing Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) (finding mental retardation and illiteracy is not "external" to the defense, within the meaning of Murray v. Carrier, 477 U.S. 478 (1986)); Graham v. Kyler, 2004 U.S. Dist. LEXIS 6394, * 12 (E.D. Pa. March 25, 2004) (Giles, C.J.).

Further, we note that other circuits that have addressed this issue in detail have similarly set a high standard for when mental illness establishes "cause." See Cawley v. Detella, 71 F.3d 961, 696 (7th Cir. 1995) (finding petitioner's depression is not sufficient because it is not an external impediment); Ervin v. Delo, 194 F.3d 908, 915 (8th Cir. 1999) (holding mental illness may be cause for default where petitioner makes conclusive showing that he was suffering from a mental disease, disorder, or defect that may substantially affect his capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation (citations omitted)); Holt v. Bowersox, 191 F.3d 970 (8th Cir. 1999) (requiring determination of whether petitioner's highly symptomatic schizoaffective disorder prevented him from making rational decisions during period for post-collateral review); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1998) (finding diagnosis as "borderline mental defective" did not establish cause); Smith v. Newsome, 876 F.2d 1461, 1465 (11th Cir. 1989) (suggesting petitioner would have to establish that he "lacked the mental capacity to understand the nature and object of habeas proceedings" to establish cause for procedural default of state claim). Petitioner has failed to conclusively demonstrate that a mental illness interfered with his ability to appreciate his position or make rational decisions concerning his pursuit of post-conviction relief.

Finally, to the extent that Petitioner alleges that his "cause" is really one of ineffective assistance of counsel, we conclude that this "cause" assertion was not properly exhausted in state court and, therefore, would not excuse default. Moreover, we note that Petitioner is not entitled to habeas relief regarding his allegations of ineffectiveness of PCRA counsel. See Pennsylvania v. Finley, 481 U.S. 551, 556 (1987)(stating that there is no right to counsel in state collateral proceedings after exhaustion of direct appellate review).

17

and the Petition, therefore, must be dismissed with prejudice.

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, reasonable jurists could not disagree that the claims in the instant Petition are procedurally defaulted and that cause and prejudice to excuse the default is not present.

Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this 27th day of September, 2010, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. section 2254 should be DENIED and DISMISSED with prejudice. There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

  /s/ Henry S. Perkin
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE